

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

PSS:SK
F.#2014R00469

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

July 17, 2014

By Hand and ECF

The Honorable Robert M. Levy
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York  11201

        Re:    United States v. Maciej Klemendorf
                    Docket No. 14-M-550

Dear Judge Levy:

        The defendant Maciej Klemendorf has requested a bail hearing before Your Honor, which has been scheduled for July 17, 2014 at 11:00 a.m.  In anticipation of the bail hearing, the government respectfully submits the enclosed detention memorandum.

                                        Respectfully submitted,

                                        LORETTA E. LYNCH
                                        United States Attorney

                     By:      /s/
                                          Saritha Komatireddy
                                          Assistant U.S. Attorney
                                          (718) 254-6054

cc:     Amanda David, Esq. (by ECF)

PSS:SK
F.#2014R00469

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

IN THE MATTER OF
THE EXTRADITION OF

                                        14-CR-550

MACIEJ KLEMENDORF,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

DETENTION MEMORANDUM

                                                     LORETTA E. LYNCH
                                                     UNITED STATES ATTORNEY
                                                     Eastern District of New York
                                                     271 Cadman Plaza East
                                                     Brooklyn, New York 11201

Saritha Komatireddy
Assistant United States Attorney
    (Of Counsel)

TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 3

STATEMENT OF FACTS ........................................................................................................... 4

ARGUMENT .................................................................................................................................. 9

    I.    Ordinary Bail Rules Do Not Apply to Extradition Proceedings ................................... 9

    II.   There Is a Strong Presumption Against Bail in Extradition Proceedings ................... 10

    III.  The Fugitive Must Not Pose a Flight Risk or Danger to the Community and
        Must Establish "Special Circumstances" to Defeat The Presumption........................ 11

    IV.  The Fugitive Poses a Flight Risk and Has Failed To
        Establish Special Circumstances ................................................................................ 13

CONCLUSION ............................................................................................................................ 15

2

## PRELIMINARY STATEMENT

The government, in execution of its treaty responsibilities and acting at the request of the Government of the Republic of Poland, respectfully requests that Maciej Klemendorf, a citizen of Poland, be held without bail pending his extradition pursuant to 18 U.S.C. § 3184 et seq. This Court has jurisdiction under Local Criminal Rule 59.1(b) to preside over extradition proceedings.

3

STATEMENT OF FACTS

Maciej Klemendorf is a fugitive from the Republic of Poland. Klemendorf was arrested on June 24, 2014, pursuant to a warrant authorized by the Honorable James Orenstein. The government seeks Klemendorf's extradition to the Republic of Poland under the Extradition Treaty between the United States of America and the Republic of Poland signed 10 July 1996 ("the Treaty"), TIAS 99-917,[1] and 18 U.S.C. §§ 3184 et seq. Klemendorf is currently in the custody of the United States Marshals Service. His attorney had informed the Court that he does not wish to challenge the basis for his extradition.

The Government of the Republic of Poland seeks the extradition of Klemendorf for the following crimes contained in an indictment issued against him on December 15, 1997: (Count I) robbery with the use of violence, in violation of Article 210, paragraph 1 of the Penal Code of the Republic of Poland; (Count II) robbery with the use of a dangerous instrument, in violation of Article 210, paragraph 2 of the Penal Code of the Republic of Poland; and (Count IV) threats in order to gain a material benefit, in violation of Article 211 of the Penal Code of the Republic of Poland,[2] all of which were committed

---

[1] The applicable treaty provisions are found in Article 2 of the treaty, as well as the Agreement between the United States of America and the Republic of Poland on the application of the Extradition Treaty of the United States of America and the Republic of Poland signed 10 July 1996, pursuant to Article 3(2) of the Agreement on Extradition between the United States of America and the European Union signed at Washington 25 June 2003, with Annex, signed 9 June 2006 ("the Annex"), TIAS 10-201.17.

[2] The Penal Code of the Republic of Poland has since been revised and renumbered; the acts punishable under prior Article 210 are now punishable under Article 280, and the acts punishable under prior Article 211 are now punishable under Article 282.

within the jurisdiction of the requesting state.³ The indictment was certified by Jolanta Jarnutowska, Head of the II Criminal Division of the Ostrołęka Regional Court.

The indictment was issued on the basis of the following facts:

      a. According to Polish authorities, on or about April 16, 1997, at approximately 2:00 p.m., Klemendorf entered Tango, a music store owned by Boguslaw Kruzyk and located at 30 Glowackiego Street, Ostraleka, Poland, with Andrzej Augustyn Żebrowski, also known as "Angelo." Store employee Tomasz Rybaczyk, his girlfriend Beata Szczubełek, Kruzyk, and a customer were present in the music store. Klemendorf and Żebrowski left the music store and returned approximately five minutes later, finding only Rybaczyk and Szczubełek present in the store. Klemendorf appeared "a little tipsy."

      b. Klemendorf approached the store counter, demanded that Rybaczyk come out from behind the store counter, and told Rybaczyk not to be afraid as he (Klemendorf) "would not hurt him." Rybaczyk walked to the corner of the store. Klemendorf then grabbed Rybaczyk by his hair and threatened to set it on fire.

      c. Szczubełek approached Klemendorf and attempted to defend Rybaczyk. Klemendorf told Szczubełek to leave the store, threatening to kill Rybaczyk "right before her eyes" if she did not do so. Szczubełek then left the store.

      d. Klemendorf ordered Rybaczyk to "give him the money"; Rybaczyk stated that he did not have any money. Klemendorf then punched Rybaczyk in the

---

³ The Government of the Republic of Poland does not seek the extradition of Klemendorf for Count III of the indictment, which is now time-barred.

5

face. Klemendorf again demanded that Rybaczyk give him PLN 100[4] and promised that they would "go away" after he received it. Rybaczyk opened the register and gave Klemendorf PLN 100. Klemendorf ordered Rybaczyk to "give me another PLN 100," and Klemendorf took an additional PLN 10 from the register. Before leaving Tango, Żebrowski ordered Rybaczyk not to tell the police, and Klemendorf ordered Rybaczyk not to tell his parents about the incident.

     e.  According to Polish authorities, later on April 16, 1997, at approximately 5:00 p.m., Klemendorf reentered Tango holding a knife. Klemendorf accused Rybaczyk of turning in Żebrowski, and threatened to kill Rybaczyk. Klemendorf took PLN 120 from the register, stating that he "had to bail Angelo out." Klemendorf also took one Casio watch, one Q&Q watch, and two Philips Phersio watches, collectively worth PLN 702.50 from the store. Klemendorf cut Rybaczyk on his left arm, hands, and chest with the knife, forced Rybaczyk to remove his clothing, and took PLN 120 and a Casio watch, worth PLN 120, from him. Before leaving Tango, Klemendorf further threatened to put "a knife into Tomasz Rybaczyk's nose and pick them out from the bottom."

     f.  According to Polish authorities, on April 17, 1997, at approximately 3:00 p.m., Klemendorf entered Tango another time and stated that "Angelo would cut Tomasz's head." Klemendorf asked to replace one of the watches he had stolen the previous day with a women's watch. He was sober, did not make threats, and promised to "fix the matter with Angelo."

---

[4] PLN represents Polish Złoty, the currency of the Republic of Poland.

6

      g.  According to Polish authorities, on April 24, 1997, Klemendorf entered Tango again. Klemendorf asked Rybaczyk to come out and stated that he "would not do anything to him." Klemendorf demanded that Rybaczyk lend him some money, and after Rybaczyk refused, Klemendorf led Rybaczyk to a car on Golebia Street, containing several others. Klemendorf ordered Rybaczyk to "jump" into the car and threatened to take Rybaczyk to a forest and give him a shovel, where Rybaczyk would "dig a grave for himself." Klemendorf demanded money as an alternative, and when Rybaczyk demonstrated that his pocket was empty, Klemendorf decided to take watches from Tango instead. Rybaczyk gave Klemendorf two Casio watches and one Q&Q watch, collectively worth PLN 309, from the store's display cases. Subsequently, Rybaczyk informed Kruzyk of the April 24, 1997 incident and quit his employment at the store. Rybaczyk also notified Polish authorities.

      h.  On April 24, 1997, Polish authorities conducted a search of Klemendorf's apartment and found a Casio watch with a manual issued on April 16, 1997. Rybaczyk identified the watch as one of those taken by Klemendorf on that date. Klemendorf was arrested and detained by Polish authorities.

    On December 23, 1997, Klemendorf was released on bail to receive medical treatments. Subsequently, a hearing was scheduled for July 14, 1998. Klemendorf did not appear for the July 14, 1998 hearing, and on December 31, 1998, the Ostrołęka Regional Court suspended the proceedings in his case while Polish authorities attempted to locate and apprehend him.

7

In or about March 2001, the Ostrołęka Police advised the Ostrołęka Regional Court that Klemendorf was residing in the United States. In or about September 2007, the Criminal Intelligence Bureau of the National Police Headquarters advised the Ostrołęka Regional Court that Klemendorf was listed in U.S. police files in connection with the following events: assault with the use of a dangerous instrument (other than a firearm) likely to cause bodily injury, causing bodily injury to a roommate, and destruction of wireless transmission equipment.[5]

Julie B. Martin, an attorney in the Office of the Legal Adviser of the United States Department of State, has provided the Department of Justice with a declaration authenticating the diplomatic note by which the request for extradition was made and a copy of the extradition treaty between the United States and the Republic of Poland, stating that the offenses for which extradition is demanded are covered by the treaty, and confirming that the documents supporting the request for extradition properly bear the seal of Polish authorities and comply with the Annex and Title 18, United States Code, Section 3190, so as

---

[5] Specifically, Klemendorf had been arrested in the United States for assault with a deadly weapon or instrument other than a firearm, in violation of § 245(a)(1) of the California Penal Code; willful infliction of corporal injury, in violation of § 273.5 of the California Penal Code; intimidation of a victim or witness, in violation of § 136.1(b)(1) of the California Penal Code; and removal, destruction, or obstruction of the use of a wireless communication device with the intent to preclude summons for assistance or notification of law enforcement, in violation of California Penal Code § 591.5.

to enable them to be received in evidence.[6]  Klemendorf does not challenge the basis for his extradition.  See ECF No. 8.

ARGUMENT

I.      Ordinary Bail Rules Do Not Apply to Extradition Proceedings

There is no statutory right to bail in extradition proceedings.  Neither the federal statute governing extradition procedures pursuant to treaties with other nations, 18 U.S.C. §§ 3184 et seq., nor any treaty, including the extradition treaty at issue in this case, provides for bail procedures.  The Bail Reform Act, 18 U.S.C. §§ 3141 et seq., and its criteria governing bail in United States criminal cases do not apply to extradition proceedings.  The Bail Reform Act applies to "offenses" against the United States triable in United States courts.  See 18 U.S.C. §§ 3141(a), 3142, 3156(a)(2).[7]  However, a fugitive sought by an extradition request is not charged with an "offense" within the meaning of 18 U.S.C. § 3156.  Instead, as in this case, a fugitive is charged with crimes against the requesting state.

Furthermore, the Federal Rules of Criminal Procedure and the Federal Rules of Evidence expressly do not apply to international extradition proceedings.  See Fed R. Crim. P. 1(a)(5)(A); Fed. R. Evid. 1101(d)(3); see also Melia v. United States, 667 F.2d 300, 302 (2d Cir. 1981); Jhirad v. Ferrandina, 536 F.2d 478, 482 (2d Cir. 1976); accord Afanesjev

---

[6] The declaration from the Department of State with its attachments, including a copy of the diplomatic note from Poland, a copy of the relevant extradition treaty, and the certified documents submitted in support of the request (marked collectively as Government's Exhibit #1) were filed with the complaint in this case.

[7] Title 18 U.S.C. § 3156(a)(2) defines "offense" for the purposes of 18 U.S.C. 3141 et seq. as "any criminal offense, other than an offense triable by court-martial, military commission, provost court, or other military tribunal, which is in violation of an Act of Congress and is triable in any court established by Act of Congress . . . ."

9

v. Hurlburt, 418 F.3d 1159, 1164-65 (11th Cir. 2005); Bovio v. United States, 989 F.2d 255, 259 n.3 (7th Cir. 1993).[8]

II.	There Is a Strong Presumption Against Bail in Extradition Proceedings

It is well-settled that there is a strong presumption against the granting of bail in international extradition cases. Indeed, the Supreme Court and Second Circuit have consistently held that bail should be granted only in "special circumstances."

In Wright v. Henkel, 190 U.S. 40 (1903), the Supreme Court announced a presumption against bail in foreign extradition proceedings. The Court stated that "bail should not ordinarily be granted in cases of foreign extradition" but may be granted in "special circumstances." Id. at 63. In establishing this presumption, the Court explained that the United States is obligated to deliver the person sought when a foreign government makes a proper request pursuant to a valid extradition treaty:

> The demanding government, when it has done all that the treaty and the law require it to do, is entitled to the delivery of the accused on the issue of the proper warrant, and the other government is under obligation to make the surrender; an obligation which it might be impossible to fulfill if release on bail were permitted. The enforcement of the bond, if forfeited, would hardly meet the international demand; and the regaining of the custody of the accused obviously would be surrounded with serious embarrassment.

Id. at 62. This presumption exists for good reason. First, the person sought by an extradition request is, by definition, an international fugitive from justice, and, as in this case, has fled

---

[8] Accordingly, hearsay is admissible in these proceedings. Melia, 667 F.2d at 302; Jhirad, 536 F.2d at 482.

from the requesting state to avoid punishment. In addition, the prospect of extradition to another country to face serious criminal charges creates a strong incentive to flee. Second, the ability of the United States to deliver fugitives pursuant to extradition requests affects its foreign policy interests. The international legal system depends upon each country's confidence in its partners' abilities and willingness to perform their treaty obligations. If, as in this case, the Government of the Republic of Poland fulfills its obligations to submit a valid extradition request, the United States is obliged to deliver the fugitive.[9] For the United States to demand that other states fulfill their reciprocal obligations, the United States must be regarded as a reliable partner that honors its agreements. This reciprocity would be defeated if a fugitive flees after being released on bond. See Wright, 190 U.S. at 62; see also Borodin v. Ashcroft, 136 F. Supp. 2d 125, 128 (E.D.N.Y. 2001).

III. The Fugitive Must Not Pose a Flight Risk or Danger to the Community and Must Establish "Special Circumstances" to Defeat The Presumption

To defeat the presumption against bail in foreign extradition proceedings, a fugitive must prove that (1) "special circumstances" exist warranting the granting of bail, and (2) he does not pose a flight risk or danger to the community.

The Second Circuit and other federal courts have consistently interpreted the presumption against bail as a strong presumption. Bail in extradition cases should be granted "only in the most pressing circumstances, and when the requirements of justice are

---

[9] The Government of the Republic of Poland has submitted a valid extradition request. Indeed, Klemendorf does not challenge the basis for his extradition. See ECF No. 8.

11

absolutely peremptory." United States v. Leitner, 784 F.2d 159, 160 (2d Cir. 1986) (quoting In re Mitchell, 171 F. 289, 289 (S.D.N.Y. 1909) (Hand, J.) (internal quotations removed)). "[T]he standard for release on bail for persons involved in extradition proceedings is a more demanding standard than that for ordinary accused criminals awaiting trial," and "only "'special circumstances' will justify bail." Hu Yau-Leung v. Soscia, 649 F.2d 914, 920 (2d Cir. 1981); see also Koskotas v. Roche, 931 F.2d 169, 175 (1st Cir. 1991) ("[I]n a case involving foreign extradition, bail should not be granted absent special circumstances"); Salerno v. United States, 878 F.2d 317, 318 (9th Cir. 1989) ("[O]nly 'special circumstances' will justify bail"); Borodin v. Ashcroft 136 F. Supp. 2d 125, 128 (E.D.N.Y. 2001). The fugitive bears the burden of establishing the existence of special circumstances warranting the granting of bail. See Leitner, 784 F.2d at 160; Salerno, 878 F.2d at 317-18. This is a heavy burden and, as such, courts are extremely reluctant to grant bail applications.

Significantly, the absence of flight risk and danger to the community are not "special circumstances," and do not justify releasing the fugitive during an extradition proceeding. See Leitner, 784 F.2d at 161, Salerno, 878 F.2d at 318; Borodin, 136 F. Supp. 2d at 130 ("Absence of risk of flight is not a legally cognizable 'special circumstance' justifying release from bail."); see also Matter of Russell, 805 F.2d 1215, 1216 (5th Cir. 1986) ("[B]eing a tolerable bail risk is not in and of itself a 'special circumstance.'"); United States v. Williams, 611 F.2d 914, 915 (1st Cir. 1979) ("[A]cceptability as a tolerable bail risk is not a special circumstance.").

Instead, absence of flight risk and danger to the community are independent and additional conditions that must be demonstrated to warrant bail. Leitner, 784 F.2d at

12

161; Borodin, 135 F. Supp. 2d at 128 ("[R]elease on bail is not granted to potential extraditees absent 'special circumstances' and assurance that the extraditee is not a risk of flight."). Similarly, findings regarding danger to a community both here and abroad would preclude bail, even in the face of arguably special circumstances. Leitner, 784 F.2d at 161; See In re Extradition of Gonzalez, 52 F. Supp. 2d 725, 735 (W.D. La. 1999); Ramnath, 533 F. Supp. 2d at 665; Extradition of Molnar, 182 F. Supp. 2d at 687; Extradition of Nacif-Borge, 829 F. Supp. at 1215; Extradition of Santos, 473 F. Supp. 2d at 1035-36.

IV.     The Fugitive Poses a Flight Risk and Has Failed To Establish Special Circumstances

In this case, the Court should deny Klemendorf's request for bail because he is a proven flight risk. Klemendorf is a fugitive. During the prosecution of the criminal case underlying this extradition request, Klemendorf was released on bail and fled. It is reasonable to expect that he would do so again. Flight risk is dispositive of the bail determination, and the Court need not consider any arguments concerning special circumstances to deny Klemendorf's application for bail.

However, even if the Court is satisfied that Klemendorf is not a flight risk, Klemendorf cannot demonstrate to this Court that "special circumstances" exist which would justify bail in this case. Indeed, the defendant has failed to articulate any special circumstances justifying bail. Even so, courts have declined to find "special circumstances" despite a number of proposed bases, including: the need to consult with one's attorney or participate in pending litigation, see Matter of Extradition of Russell, 805 F.2d 1215, 1217 (5th Cir. 1986); United States v. Tang-Yee Chun, 657 F. Supp. 1270, 1272 (S.D.N.Y. 1987);

13

United States v. Messina, 566 F. Supp. 740, 743 (E.D.N.Y. 1983); the complexity of the pending litigation, see Russell, 805 F.2d at 1217; United States v. Kin-Hong, 83 F.3d 523 (1st Cir. 1996); Tang Yee-Chun, 657 F. Supp. at 1271-72; health issues including discomfort, dietary needs, or associated health concerns while incarcerated, see Borodin v. Ashcroft, 136 F. Supp. 2d 125, 131 (E.D.N.Y. 2001); In re Klein, 46 F.2d 85 (S.D.N.Y. 1930); political or professional status, see Borodin, 136 F. Supp. at 131; the availability of electronic monitoring, see id. at 134; Matter of Extradition of Rovelli, 977 F. Supp. 566, 569 (D. Conn. 1997); the fugitive's character, past conduct and ties to the community, see In Matter of Extradition of Nacif-Borge, 829 F. Supp. 1210, 1220 (D. Nev. 1993); ordinary delay or delay occasioned by the fugitive in the course of extradition proceedings, Jhirad v. Ferrandina, 536 F.2d 478, 485 n. 9 (2d Cir. 1976); substantial likelihood of success against extradition or action in the requesting country, see Charlton v. Kelly, 229 U.S. 447, 462 (1913); Collins v. Loisel, 259 U.S. 309, 316-317 (1922); Hooker v. Klein, 573 F.2d 1360, 1368 (9th Cir. 1978), cert. denied, 439 U.S. 932 (1978); DeSilva v. DiLeonardi, 125 F.3d 1110, 1112 (7th Cir. 1997), cert. denied, 525 U.S. 810 (1998); and availability of bail for the same offense in the requesting country, Charlton, 299 U.S. at 462; Collins, 259 U.S. at 316-17.

There is no basis for permitting bail in this case and doing so would invite the possibility of impeding the United States in the conduct of its foreign affairs. Klemendorf is a fugitive, a flight risk, and has not demonstrated the "special circumstances" required to justify bail. His failure to appear would leave the Government of the Republic of Poland without remedy or compensation.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that Klemendorf's bail application be denied.

Dated: Brooklyn, New York
      July 17, 2014

                              Respectfully submitted,

                              LORETTA E. LYNCH
                              United States Attorney

By:      /s/
                Saritha Komatireddy
                Assistant U.S. Attorney
                Tel: (718) 254-6054